PARIS MEDICINE COMPANY *v.* LUSBY.

Opinion delivered July 11, 1927.

1.  BANKRUPTCY—COMPOSITION WITH CREDITORS.—To be binding on all the creditors, a composition with creditors in bankruptcy proceedings requires confirmation by the court.

2.  BANKRUPTCY—COMPOSITION WITH CREDITORS.—Where a debtor, after being adjudged a bankrupt, offered to make a composition with creditors which was accepted by certain creditors, but was not confirmed by the court, the composition was binding only on the creditors who accepted same.

Appeal from Pulaski Circuit Court, Second Division; *Richard M. Mann,* Judge; reversed.

*Rogers, Barber & Henry,* for appellant.

*Walter A. Isgrig* and *Thos. C. Claiborne,* for appellee.

SMITH, J. Three separate suits, which were later consolidated, were brought against W. H. Lusby to recover balances of accounts for goods, wares and merchandise sold by the plaintiffs to the defendant. The suits were brought in the municipal court of Little Rock, and from judgments in favor of the plaintiff the defend-

ant appealed to the circuit court, where the causes were consolidated and tried as a single case.

The correctness of the accounts sued on and the original liability therefor is not denied by the defendant, but a present liability is denied on the ground that there was a composition and settlement of these and all other accounts due by the defendant to his various creditors; but plaintiffs offered testimony, which is not disputed, showing the original liability of the defendant for the amounts sued for in each of the three cases.

The plaintiffs offered in evidence, and in opposition to the plea of composition, the record of the proceedings in the bankruptcy court in the matter wherein the defendant had filed a voluntary petition in bankruptcy.

Appellee had been engaged in the retail drug business, and he filed a voluntary petition in bankruptcy, and accompanying this petition was a list of his creditors, with the addresses and amounts due each. Upon this petition defendant was adjudged a bankrupt on August 2, 1922. Thereafter the referee in bankruptcy sent to each creditor the following notice: "You are notified that the first meeting of the creditors of W. H. Lusby of Little Rock, Arkansas, who was duly adjudged a bankrupt on August 2, 1922, on a petition filed August 2, 1922, will be held before Charles C. Waters, referee in bankruptcy, at room 110, Fulk Building, in the city of Little Rock, Arkansas, on August 21, 1922, at 10 o'clock A. M., where claims may be presented, properly verified for allowance, trustee appointed, bankrupt examined, proposed sale of assets acted upon, and such other business transacted as may properly come before the meeting."

But, before this meeting of the creditors, which was appointed for August 21, 1922, was held, there was filed with the clerk of the court in which the bankruptcy proceeding was pending, on August 17, 1922, a motion by the defendant, Lusby, to dismiss his petition. This petition contained the following recitals: "Comes the petitioner, W. H. Lusby, and asks to dismiss his petition filed in this cause, and for cause says: . That he has made

satisfactory settlement with all his creditors except ——, and that he is ready and willing to make satisfactory settlement with them.  He attaches hereto and makes a part of his motion the agreement he has with his creditors.  Wherefore, your petitioner, W. H. Lusby, asks that his petition be dismissed.''

The agreement with the creditors referred to reads as follows: ''This agreement, made this 14th day of August, 1922, by and between W. H. Lusby and the undersigned creditors, or attorneys representing creditors, with full power to act, witnesseth:  For and in consideration of the sum of fifteen hundred dollars ($1,500) agrees to execute a full and complete release of any and all claims against the said W. H. Lusby, and further agrees to a dismissal and to dismiss any and all suits now pending against W. H. Lusby.  It is distinctly understood and agreed by and between ourselves that we will accept our *pro rata* share to which we may be entitled under the law in full satisfaction of any and all claims against the stock of drugs, sundries, toilet articles, patent medicines, and all other items not classed as fixtures, and to deliver a full and complete release to W. H. Lusby, against any claims of whatsoever kind or nature.''  This agreement was signed by a number of creditors, but was not signed by either of the plaintiffs here.

On August 22, 1922, the defendant sent to each of his creditors the following notice: ''On August 2 the writer, trading as Lusby's Drug Store, filed in the district court a petition in voluntary bankruptcy, a compromise offer was submitted to a majority of the creditors and accepted, accordingly a motion was filed on the 17th day of August to dismiss the petition, which was recommended by the district court referee to the court.  The agreement, which was signed by a majority of creditors, is based on the proposition to accept $1,500 in full satisfaction of any and all claims and to accept whatever *pro rata* they would be entitled to under the law.  By this method we are able to secure a larger *pro rata* and to save a considerable portion of the court cost.  Kindly

advise me if you have any objections, and who represents you here, so your portion may be handed him upon the execution of an assignment of claim. I regret the necessity of this action, but feel that I acted for the best interests of all parties. Kindly accept this as notice of the procedure indicated. (Signed) W. H. Lusby.''

On September 27 the referee mailed to the creditors the following notice: ''You are notified that W. H. Lusby, of Little Rock, Arkansas, has filed a petition in the United States District Court at Little Rock, Arkansas, asking for a composition with its creditors on this the 27th day of September, 1922, and said petition has been referred to Charles C. Waters, one of the referees of said district, and, in accordance therewith, a meeting of creditors is hereby called to consider offer of composition on the 9th day of October, 1922, at 11 o'clock in the forenoon, in the office of the referee, 110 Fulk Building, in the city of Little Rock, Arkansas.''

On September 28 the referee sent to the creditors the following additional notice: ''Disregard notice mailed September 28, 1922, *In re* W. H. Lusby, bankrupt, and be advised as to the following notice: You are notified that W. H. Lusby has filed a petition in the United States District Court at Little Rock, Arkansas, asking that said court vacate its order of adjudication and also to dismiss W. H. Lusby's voluntary bankruptcy petition as filed August 2, 1922. The district court has ordered the referee to call a meeting of said W. H. Lusby's creditors to meet for the purpose of accepting or rejecting said petition, and the referee herewith calls a meeting of the creditors for October 9, 1922, at 11 o'clock in the forenoon, at the office of the referee, 110 Fulk Building, in the city of Little Rock, Arkansas.''

It does not appear that the meeting of which notice was there given was ever held, but it does appear that, on August 17, 1922, the referee entered upon his records a notation of the filing of the petition of the bankrupt on that date, and it was there recited that: ''Now therefore it is recommended by the referee that the petition for

setting aside the adjudication and dismissing the petition be granted and allowed. Without objection the motion to dismiss is to be treated also as a motion to vacate the adjudication of bankruptcy.'' (Signed by the referee).

On the 14th of October, 1922, the referee filed with the clerk of the United States District Court the following report and recommendations: ''The referee reports that he gave all the creditors mentioned in the bankrupt's petition a full ten-days' written notice that there would be a meeting of the creditors held in the office of the referee in the Fulk Building in the city of Little Rock, Arkansas, at 11 o'clock A. M. October 9, 1922. No creditor appeared at said meeting. W. H. Lusby, the bankrupt, did appear for said meeting, and showed that he had made satisfactory settlement with all of his creditors, and requested a recommendation by the referee to the court that the adjudication declaring him a bankrupt be vacated. The referee sees no reason why this request should not be granted, and therefore recommends to the court that the adjudication declaring the said W. H. Lusby a bankrupt be vacated, and that said petition be dismissed.''

This report was indorsed by the presiding judge of the United States District Court as follows: ''Let the case be dismissed.'' And no other order appear to have been made by the court.

A receiver was appointed in the case, but no trustee was ever elected, and the receiver explained what was done as follows: ''I can explain that. Mr. Lusby filed a petition in bankruptcy; Judge Trieber was absent, and it was referred to Judge Waters as referee, who adjudicated him a bankrupt and appointed myself as receiver. The sheriff had closed up the store, and I went over and got the keys from Mr. Sibeck, in the sheriff's office, and what money was on hand, and took it into the bankruptcy court, and inventoried the assets, and was going to ask for an order of sale, but Mr. Lusby and his attorney came into court and asked the sale not to be made for

the fact he was going to make a settlement with the creditors. He was going to petition the court to have the bankruptcy proceedings dismissed, which was done at a later date. At the meeting of the creditors no action was taken; in fact no creditors appeared except Mr. Lusby and a few lawyers—I don't remember who, right now, and they agreed then to withhold any action as to the election of a trustee until such action was taken by Mr. Lusby on dismissing his petition in bankruptcy; and he filed a petition to dismiss the bankruptcy proceedings, which was granted by Judge Trieber. There had been no sale of the assets whatever, and, after the petition in bankruptcy had been dismissed, and I had received—I do not remember how much, but I had received a certain sum of money to be pro rated to certain creditors, which I did pro rate, but that was acting as trustee merely by consent of the different attorneys who represented the creditors, and that had nothing to do with the bankruptcy.''

The receiver further testified that there was no composition at all, and that the bankruptcy proceedings was dismissed because the petitioner filed a petition asking that this be done, and that the ''agreement (for the settlement) did not go into effect until after the petition in bankruptcy had been dismissed.''

The receiver was asked: ''Didn't the court know of this agreement, and that is the reason he dismissed it?'' The witness answered: ''They (the creditors) agreed to this settlement outside of the bankruptcy court, and that is the reason the petition in bankruptcy was dismissed.''

The receiver further testified that he distributed the money paid him by Lusby, but he paid money only to those creditors who had agreed to the proposed settlement, and the plaintiffs here were not among that number, and nothing was paid them. He further testified that ''I did not pay out any money acting under the bankruptcy court whatever,'' and further that ''he was acting as trustee merely by the consent of the different attorneys who represented creditors, and that had nothing to do with the bankruptcy,'' and that the money paid

out by him "was all pro rated after the bankruptcy adjudication had been dismissed by Judge Trieber."

The trial court made the following finding: "I will render judgment for the amount of the composition; as to the rest, I think they are estopped from collecting it. Judgment will be for the percentage of the claim."

We have set out rather extensively the proceedings of the bankruptcy court as they were certified by the clerk of the United States District Court, and also the testimony in relation thereto, because it is insisted that there was a composition in bankruptcy with the creditors.

Appellee cites us to §§ 597 and 600 of the chapter on Bankruptcy, in 7 C. J. page 346. These sections read as follows:

"Section 597. The effect of a composition is to supersede the bankruptcy proceedings and to reinvest the bankrupt with all his property free from the claims of creditors, without any further act by the trustee or by the court."

"Section 600. The composition binds creditors who proved their claims or whose debts were scheduled and who had notice of the offer of composition, although they did not prove their claims; but an unscheduled creditor is not bound unless he had notice of the bankruptcy proceeding prior to the time when the application for confirmation was filed."

The error in appellee's contention is that there has been no composition in bankruptcy. The record which we have set out shows a settlement with certain creditors, but this settlement binds only the parties thereto. Appellants were not parties thereto, and are therefore not bound, unless there was, in fact, a composition as is provided for in the bankruptcy act.

Speaking of the nature of a composition proceeding, the Supreme Court of the United States, in the case of *Cumberland Glass Mfg. Co.* v. *DeWitt & Co.*, 237 U. S. 447, 35 S. Ct. 636, 59 L. ed. 1042, said:

"The nature of composition proceedings is nowhere better stated than by Judge Lowell in *In re Lane*, 125

Fed. Rep. 772, 773 (D. C.), in which it is said: 'The case of composition is in some respects exceptional. It is a proceeding voluntary on both sides, by which the debtor, of his own motion, offers to pay his creditors a certain percentage of their claims in exchange for a release from his liabilities.  The amount offered may be less or more than would be realized through distribution in bankruptcy by the trustee.  The creditors may accept this offer or they may refuse it.  For the purpose of the composition all the creditors are treated as a class, and the will of the majority is enforced upon the minority, provided the decision of the majority is approved by the court.  Except for this coercion of the minority, the intervention of the court of bankruptcy would be hardly necessary.  Section 12-e (30 Stat. 550, U. S. Comp. St. 1901, p. 3427) provides: 'Upon the confirmation of a composition, the consideration shall be distributed as the judge shall direct, and the case dismissed.  Whenever a composition is not confirmed, the estate shall be administered in bankruptcy as herein provided.'  Composition is thus treated, even in the act, as in some respects outside of bankruptcy.''

It thus appears that a composition, to be binding on all the creditors, requires confirmation by the court. Here there was no confirmation of the composition.  The court was not asked to confirm, and the only action taken by the court was to dismiss the entire proceeding, and, when this was done, the debtor's attitude was and is that of one who made a private settlement with his creditors, and those creditors are barred—and those only—who participated in and became parties to this settlement. Appellants did not participate and therefore are not barred. *International Shoe Co.* v. *Pinkus,* 173 Ark. 316, 292 S. W. 996.

It follows therefore that, under the undisputed testimony, judgment should have been rendered for the plaintiffs for the amounts of their accounts; and, as the case appears to have been fully developed, judgments will be rendered here accordingly.